IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Melissa Gulledge Bradshaw, ) | C/A No. 0:13-1665-PJG |
|                  Plaintiff, ) | |
| v. ) | **ORDER** |
| Carolyn W. Colvin, Acting Commissioner ) of Social Security, ) | |
|                  Defendant. ) | |

This social security matter is before the court pursuant to Local Civil Rule 83.VII.02 DSC and 28 U.S.C. § 636(c) for final adjudication, with the consent of the parties, of the plaintiff's petition for judicial review. The plaintiff, Melissa Gulledge Bradshaw ("Bradshaw"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

**SOCIAL SECURITY DISABILITY GENERALLY**

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

 (1)  whether the claimant is engaged in substantial gainful activity;

 (2)  whether the claimant has a "severe" impairment;

 (3)  whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

 (4)  whether the claimant can perform her past relevant work; and

 (5)  whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[1] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## ADMINISTRATIVE PROCEEDINGS

In June 2009, Bradshaw applied for DIB, alleging disability beginning October 30, 2008. Bradshaw's application was denied initially and upon reconsideration, and she requested a hearing

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. § 404.1520(h).

before an administrative law judge ("ALJ"). A hearing was held on January 17, 2012, at which Bradshaw, who was represented by Kiersten Gordon, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on March 20, 2012 finding that Bradshaw was not disabled. (Tr. 13-22.)

Bradshaw was forty-one years old on her date last insured. (Tr. 121.) She has a high school education and past relevant work experience as a branch and assistant manager at a bank, and as a customer service manager at a grocery store. (Tr. 143, 148.) Bradshaw alleged disability since October 30, 2008 due to cervical spondylosis with myelopathy, degenerative disc disease of the cervical and lumbar spine, a damaged C5 nerve, severe numbness, and muscle spasms. (Tr. 142.)

In applying the five-step sequential process, the ALJ found that Bradshaw had not engaged in substantial gainful activity since her alleged onset date. The ALJ also determined that Bradshaw's degenerative disc disease of the lumbar spine; residuals of cervical spine surgery at C5-6 with fusion; adjustment disorder with anxiety; bipolar disorder; post-traumatic stress disorder; personality disorder; obesity; and osteoarthritis/polyarthritis were severe impairments. However, the ALJ found that Bradshaw did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that Bradshaw retained the residual functional capacity to

> perform light work as defined in 20 CFR 404.1567(b), with restrictions that require simple, routine tasks; a supervised environment; no required interaction with the public or team-type interaction with co-workers; no lifting or carrying over 20 pounds occasionally or 10 pounds frequently; no standing and/or walking over 6 hours in an 8-hour workday; only occasionally stooping and balancing; no climbing or ladders or scaffolds; and avoidance of unprotected heights, vibrations and machinery with exposed, hazardous, moving parts.

(Tr. 17.) The ALJ found that although Bradshaw was unable to perform any past relevant work, her impairments did not prevent her from doing any other kind of work. Therefore, the ALJ found that Bradshaw had not been under a disability from October 30, 2008 through the date of his decision. (See Tr. 15-22.)

Bradshaw submitted additional evidence to the Appeals Council, which denied her request for review on May 2, 2013 making the decision of the ALJ the final action of the Commissioner. (Tr. 2-5.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Although Bradshaw does not list specific issues for this judicial review, as stated by the Commissioner, Bradshaw appears to raise the following issues:

I. Does substantial evidence support the step three "listing" finding?

II. Did the administrative law judge adequately consider Plaintiff's obesity?

III. Does substantial evidence support the assessed residual functional capacity?

## DISCUSSION

**A.     Listing 12.04**

At Step Three of the sequential analysis, the Commissioner must determine whether the claimant meets the criteria of one of the Listings and is therefore presumptively disabled. "For a claimant to show that [her] impairment matches a listing, it must meet *all* of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis added). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also meet the criteria found in the Listing of that impairment. 20 C.F.R. § 404.1525(d); see also Bowen v. Yuckert, 482 U.S. 137, 146 (1987) (noting that the burden is on the claimant to establish that his impairment is disabling at Step Three); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (same). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment.

The ALJ specifically considered Bradshaw's mental impairments and found that "[t]he severity of [Bradshaw's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.08." (Tr. 16.) Bradshaw argues that the ALJ erred in failing to find that she met Listing 12.04A(3). The required level of severity to satisfy Listing 12.04 is met when the criteria in paragraphs "A" and "B" are satisfied or when the criteria



in paragraph "C" are satisfied.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.  In this case, the ALJ first found that Bradshaw did not satisfy the paragraph "B" criteria,[2] which require that Bradshaw's mental impairments result in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

Id.  Specifically, the ALJ found that Bradshaw had mild restrictions in activities of daily living; moderate difficulties in social functioning and in concentration, persistence, or pace; and no evidence of episodes of decompensation of a significant duration.  (Tr. 16-17.)  The ALJ further found that Bradshaw did not satisfy the paragraph "C" criteria.

Bradshaw first states that she "should meet Listing 12.04(A)(3) since she has medically documented persistence of bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive symptoms."  (Pl.'s Br. at 13, ECF No. 14 at 13.)  To the extent that Bradshaw's argument alleges that she meets the paragraph A criteria of Listing 12.04 and therefore meets the Listing, as stated above Bradshaw must meet both the A and B criteria or the C criteria to meet or equal Listing 12.04.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.

---

[2] It appears to be undisputed that Bradshaw met the paragraph A criteria.



Bradshaw also points to records where Dr. Olin Fox, her treating psychiatrist since May 2011, assessed Bradshaw with a GAF score of 50,[3] arguing that at those times "she would have evidence under the B criteria of marked difficulties in maintaining social functioning and marked difficulties in maintaining concentration, persistence or pace." (Id.) "Marked" restrictions or difficulties mean "more than moderate but less than extreme" and "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C.

In finding that Bradshaw had moderate difficulties in social functioning, the ALJ observed that "[a]t the hearing, the claimant stated that she did not like to go out in public or to deal with people. However, in her July 2009, ADF, the claimant noted that she spent time with her family, with others, and attended Church." (Tr. 16.) In finding that Bradshaw had moderate difficulties in concentration, persistence or pace, the ALJ observed that "[i]n [Bradshaw's] July 2009, ADF, the claimant reported that she was able to maintain attention for one hour, and to finish what she started. She testified that she spent hours watching TV every day, an activity that requires a certain amount of concentration." (Tr. 16-17.) Additionally, the ALJ assigned great weight to the September 2010 assessment of Dr. Larry Clanton, a state agency reviewer, finding it consistent with the bulk of the

---

[3] The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, fourth edition ("DSM-IV"), contains a numeric scale (0 through 100) used to rate the severity of psychological symptoms and/or social, occupational, or school functioning. A GAF score may reflect the severity of symptoms or impairment in functioning at the time of the evaluation. Id. at 32-33. According to the DSM-IV, a GAF score between 41 and 50 may reflect "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Id. at 34. However, the court observes that the fifth edition of the DSM, published in 2013, has discontinued use of the GAF. American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, 16 (5th ed. 2013) ("DSM-V").



medical evidence. The ALJ observed that the above limitations and difficulties were corroborated by Dr. Clanton's assessment. (Tr. 17, 466.)

As noted above, a GAF score may reflect the severity of symptoms or impairment in functioning at the time of the evaluation. DSM-IV at 32-33. However, a "[p]laintiff's GAF score is only a snapshot in time, and not indicative of [her] long term level of functioning." Parker v. Astrue, 664 F. Supp. 2d 544, 557 (D.S.C. 2009); see also Comments to Revised Medical Criteria for Evaluating Mental Disorders at 65 F.R. 50746-01, 50764-50765 (August 21, 2000) (commenting that the GAF scale "does not have a direct correlation to the severity requirements in [the Commissioner's] mental disorders listings"). The court finds that these GAF scores alone are insufficient to demonstrate that the ALJ's determination that Bradshaw did not meet the paragraph B Criteria was unsupported by substantial evidence.

**B.    Obesity**

Bradshaw also argues that the ALJ failed to consider Bradshaw's obesity in determining her residual functional capacity. Bradshaw points out that at the time of the hearing she weighed 236 pounds with a height of 64 inches. Bradshaw argues that although the ALJ found her obesity to be a severe impairment, "he failed to comply with SSR 02-01p in not considering the impact of the Plaintiff's obesity on her ability to work." (Pl.'s Br. at 14, ECF No. 14 at 14.)

Social Security Ruling ("SSR") 02-01p states that obesity is a medically determinable impairment that an ALJ must consider in evaluating disability, that the combined effects of obesity and other impairments can be greater than the effects of each single impairment considered individually, and that obesity must be considered when assessing residual functional capacity.

Although the ALJ does not appear to have expressly examined the impact of Bradshaw's obesity in formulating her residual functional capacity, these omissions do not require a remand



under the facts of this case. The ALJ thoroughly discussed all of the evidence presented in this case in his residual functional capacity analysis. For example, the ALJ specifically found that Bradshaw's obesity was a severe impairment. Further, when considering her functional limitations, he observed that treatment records from Carolinas Rheumatology & Osteoporosis Center described Bradshaw's osteoarthritis and obesity as only mild to moderate in severity. The ALJ also observed other objective findings including normal ranges of extremity motions and a normal gait/mobility, and he noted that in April 2009, Dr. Rakesh P. Chokshi determined that Bradshaw could perform light duty work. Accordingly, the ALJ found that Bradshaw retained the residual functional capacity to perform light work with additional limitations. Bradshaw's reliance on records demonstrating that doctors have advised her to lose weight and treatment notes indicating that losing weight may help with her pain or impairments fail to demonstrate that additional limitations are warranted. Thus, even if the ALJ erred in failing to further discuss her obesity, Bradshaw cannot demonstrate any harm and remand is not warranted.[4] See SSR 02-01p (providing that "we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.").

**C.     Residual Functional Capacity Assessment**

A claimant's "residual functional capacity is the most [a claimant] can still do despite [her] limitations" and is determined by assessing all of the relevant evidence in the case record. 20 C.F.R. § 404.1545(a)(1). In assessing residual functional capacity, an ALJ should scrutinize "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). Social Security Ruling 96-8p

---

[4] Moreover, as pointed out by the Commissioner, this is the first time that Bradshaw has alleged any limitations stemming from her obesity.

Page 9 of 13



further requires an ALJ to reference the evidence supporting his conclusions with respect to a claimant's residual functional capacity. As stated above, the ALJ found that Bradshaw retained the following residual functional capacity

> to perform light work as defined in 20 CFR 404.1567(b), with restrictions that require simple, routine tasks; a supervised environment; no required interaction with the public or team-type interaction with co-workers; no lifting or carrying over 20 pounds occasionally or 10 pounds frequently; no standing and/or walking over 6 hours in an 8-hour workday; only occasionally stooping and balancing; no climbing or ladders or scaffolds; and avoidance of unprotected heights, vibrations and machinery with exposed, hazardous, moving parts.

(Tr. 17.)

Bradshaw argues that in determining Bradshaw's residual functional capacity, the ALJ failed to consider evidence showing that she "has severe, chronic pain in multiple areas of her body, particularly her neck, hands, hips, low back, and feet." (Pl.'s Br. at 12, ECF No. 14 at 12.) Bradshaw argues that the pain in her hands and her carpal tunnel syndrome would preclude the light work lifting requirements, and her other pain would make the standing and walking requirements as well as bending, twisting, pushing, and pulling extremely difficult. Bradshaw argues that "[t]he Commissioner minimizes effect of the Plaintiff's erosive osteoarthritis, neuropathy in her lower extremities; and chronic neck and low back pain." (Id.)

The court finds Bradshaw's speculative argument fails to demonstrate that the ALJ's residual functional capacity analysis was unsupported by substantial evidence or controlled by an error of law. In fact, in support of his residual functional capacity assessment, the ALJ explicitly discussed the medical evidence of record, including Bradshaw's treatment notes, the clinical testing and radiograph results, the medical opinions, and Bradshaw's testimony. (See Tr. 18-20.) For example, post-cervical spine surgery, the ALJ observed that "physical examinations of the claimant revealed normal ranges of extremity motions, a normal gait/mobility and a normal mood/affect with no signs



of motor/sensory deficits or acute distress," which "evidenced that the claimant was mentally as well as physically stable and able to function, even with her back disorders." (Tr. 19.) The ALJ also noted that although probative tests revealed C5-6 degenerative disc disorder, "the tests did not show any signs of gross instability or significant stenosis." (Id.) Additionally, the ALJ found that records from Pee Dee Orthopaedic, where Bradshaw received physical therapy in 2008 and 2009, revealed that

> [i]n December of 2008 and February of 2009, post-surgical radiographs of the claimant's cervical spine demonstrated good instrumentation and fusion positioning. In addition, post-surgical physical evaluations of the claimant revealed only a mild lower lumbar spine spasm, a healing surgical incision and full extremity motor strength. In April of 2009, it was determined that the claimant was able to perform light duty work.

(Id.) Records from Chesterfield General Hospital, where Bradshaw received physical/occupational therapy in 2008 and 2009, "indicated that the claimant had no limitations in mobility/transfers and that the claimant was responding well to treatment, indicating that the claimant's condition was improving with treatment modalities." (Id.) The ALJ found that Bradshaw reported that therapy had been helping to manage her pain and that October 2009 radiograph evidence of Bradshaw's lumbar spine showed evidence of only minimal degenerative changes with no acute findings. The ALJ observed that although Bradshaw was treated for carpal tunnel syndrome evidenced by electrodiagnostic studies and pain, the electrodiagnostic study did not indicate the severity of Bradshaw's carpal tunnel syndrome.

With regard to Bradshaw's mental impairments, the ALJ found that examination findings evidenced that Bradshaw was able to mentally function, and contradicted her allegations of memory function problems. Additionally, the ALJ found that continuation of the same treatment medications suggested that her mental condition was stable and observed reports that Bradshaw's mood had been

stable in September and December 2011. Despite finding that the records established that Bradshaw was able to function, the ALJ "acknowledged that the claimant has a bipolar disorder and therefore finds that the claimant is limited to performing simple, routine work with restrictions in interacting with the public/co-workers." (Tr. 20.) Finally, the ALJ observed that Dr. Chokshi and the state agency physician reviewers all opined that Bradshaw could perform light work with certain limitations, which further supported the residual functional capacity assessment.

Citing SSR 96-8p, Bradshaw also argues that the evidence does not support a finding that she can perform sustained work activities in an ordinary work setting on a regular and continuing basis. Bradshaw argues that there is evidence that she spends many days in bed due to her bipolar disorder and points to an opinion in May 2012 from Dr. Fox opining that she was unable to handle the stress of employment without destabilizing and was totally and permanently disabled.

As an initial matter, Bradshaw bears the burden of producing evidence demonstrating how her impairments affected her functioning during the relevant time period. See 20 C.F.R. § 404.1512(c); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Creegan v. Colvin, No. 1:13CV5, 2014 WL 3579659 (W.D.N.C. July 21, 2014) ("It is the claimant's burden, however, to establish her RFC by demonstrating how her impairment impacts her functioning."). Moreover, upon review of the record as a whole, the court finds that Bradshaw has not demonstrated that the ALJ's residual functional capacity analysis is unsupported by substantial evidence of controlled by an error of law. In compliance with SSR 96-8p, the ALJ provided an extensive narrative discussion, which included a full discussion of the medical and nonmedical evidence. The ALJ's discussion explained his resolution of inconsistencies or ambiguities of the evidence in the case record, such as his evaluation



of Bradshaw's subjective complaints as well as the medical evidence. With regard to Dr. Fox's opinion, which was submitted to the Appeals Council following the ALJ's decision, the court observed that the ALJ specifically evaluated treatment notes from Dr. Fox, including reports that Bradshaw's mood had been stable in September and December 2011. Moreover, issue of whether a claimant is disabled is reserved to the Commissioner and opinions by medical sources on that point are not entitled to special significance. See 20 C.F.R. § 404.1527(d). Thus, the court finds that remand is not warranted on this ground.

## ORDER

For the foregoing reasons, the court finds that Bradshaw has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. Therefore, it is hereby

**ORDERED** that the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

September 8, 2014
Columbia, South Carolina